JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants Gerald W. Cowden, Esq. and Cowden, Humphrey Sarlson Co., L.P.A. (collectively referred to as ("Cowden Humphrey") appeal the trial court's decision granting plaintiff-appellee Brian Stuffleben's ("Stuffleben") motion to compel discovery. For the reasons discussed below, we find merit to this appeal and reverse and remand for an in camera inspection.
 {¶ 2} Stuffleben filed a complaint on March 12, 2002, alleging that Cowden Humphrey committed legal malpractice and fraud through its representation of him and his company, Technology Strategies, Inc. ("TSI"). Specifically, Stuffleben claimed that Cowden Humphrey failed to properly represent his interests and/or disclose conflicts of interest and that the firm "sought to personally profit from business dealings" with Stuffleben through the following activities: (1) "advising plaintiff to reject valuable offers to sell his business;" (2) "creating and personally participating in a venture capital entity which thereafter acquired a controlling interest in plaintiff's business without disclosing defendants' participation in that entity;" (3) "seizing effective financial control of plaintiff's business so as to further defendants' financial interests;" (4) "exposing plaintiff to personal financial loss;" and (5) "causing the failure of the business."
 {¶ 3} Cowden Humphrey admitted that it had represented TSI but denied ever representing Stuffleben. Cowden Humphrey acknowledged that Stuffleben was the majority shareholder of TSI from the time of its incorporation until May 18, 2000, but denied that Stuffleben was still the majority shareholder.
 {¶ 4} In discovery, Stuffleben requested all of Cowden Humphrey's files generated and maintained in its representation of Stuffleben and his companies, TSI and TSI Holdings, Inc. ("TSI Holdings"). Cowden Humphrey refused to disclose the information on the basis it was protected under the attorney-client privilege, attorney work product and/or proprietary confidential information. On October 1, 2002, without attempting to resolve the matter informally with Cowden Humphrey, Stuffleben filed a motion to compel, seeking responses and/or documents concerning the following: (1) the representation of Stuffleben by Cowden Humphrey, (2) the representation of TSI by Cowden Humphrey, (3) the representation of TSI Holdings, Inc., and (4) any document which reflects or otherwise related to Stuffleben, or to any of the claims or defenses raised in this action. Stuffleben also sought responses to the following interrogatories:
"2. State the name, job title, residence and business address andresidence and business telephone number of each person with knowledgerelevant to the subject matter of the complaint or any defenses raised inthe answer, and for each person state whether a statement has been takenby any of the Defendants, their agents, or attorneys.
 "4. With regard to each person and entity that invested funds in HockeyStick Investments, Ltd., Hockey Stick Seed Capital Fund I, Ltd, and/ortheir affiliates, state the name, residence and business address,residence and business telephone number, amount invested, and date ofeach investment."
 {¶ 5} In his motion to compel, Stuffleben argued that, as the sole shareholder and chief executive officer of both TSI and TSI Holdings, he was entitled to the companies' files maintained by Cowden Humphrey in its representation. He further asserted that his interests were indistinguishable from the companies' interests and that he was justified in believing that he was a client of Cowden Humphrey in its representation of TSI and TSI Holdings.
 {¶ 6} Specifically, Stuffleben asserted that he sought Cowden Humphrey's advice in June 1998 on a variety of legal issues, including: (1) selling his company to an interested outside buyer, (2) possible causes of action against his former law firm and accounting firm in their representation of TSI, and (3) the defense of collection suits filed against both TSI and Stuffleben personally. Additionally, Stuffleben argued that Cowden Humphrey counseled him on those matters and continued to represent both Stuffleben and TSI until mid-2001.
 {¶ 7} Stuffleben further asserted that, based on the advice provided by Cowden Humphrey, TSI was restructured to eliminate the corporate debt and became TSI Holdings, with Stuffleben signing a personal guaranty of all loans made to TSI Holdings by Ganzcorp Investments, Inc. Relying on Cowden Humphrey's advice, Stuffleben also declined an offer from an outside party interested in buying TSI and agreed to allow a venture capital group to take over the important management decisions. Stuffleben further contended that even though Cowden Humphrey and a number of its clients held an interest in the venture capital group, Cowden Humphrey never disclosed the conflict to Stuffleben nor did it disclose that Ganzcorp Investments, Inc. was also a client. As a result of Stuffleben's reliance on the advice of Cowden Humphrey, the companies suffered severe financial losses and are currently "defunct." Furthermore, Stuffleben faces personal liability for over $1 million in personal guarantees.
 {¶ 8} In support of his arguments, Stuffleben attached an "Objection to Magistrate's Decision" filed by Cowden Humphrey in another action on behalf of both Stuffleben personally and TSI. Stuffleben also included a letter he wrote to Cowden Humphrey specifically requesting legal assistance regarding the organization of TSI in the event of his death and the distribution of his personal assets. Stuffleben contended in his motion that these documents demonstrate that Cowden Humphrey had always represented Stuffleben simultaneously while representing Stuffleben's companies.
 {¶ 9} Additionally, Stuffleben attached a copy of the guaranty agreement he executed on behalf of TSI Holdings wherein he personally guaranteed any debts incurred by TSI Holdings for loans and advances made to or to be made by Ganzcorp Investments, Inc. Stuffleben alleges that he executed such agreement only upon the advice of Cowden Humphrey and as a result of the agreement, he is currently personally liable for over $1 million to Ganzcorp Investments.
 {¶ 10} Cowden Humphrey moved to strike the motion to compel because Stuffleben failed to attempt to resolve the discovery dispute informally in accordance with Civ.R. 37(E) and Loc.R. 11(F). Cowden Humphrey also argued that Stuffleben was never a client but approached the law firm as a corporate officer, seeking advice on corporate business matters and, therefore, the firm represented only the corporate entities and not Stuffleben as a shareholder. In support of its motion, Cowden Humphrey attached an affidavit of Gerald W. Cowden attesting that neither he nor his law firm ever undertook the legal representation of Stuffleben in his personal capacity. Cowden Humphrey also argued that by Stuffleben's own admission in a former deposition, he was not the sole shareholder of TSI. In fact, Cowden Humphrey identified five other individuals as shareholders of TSI.
 {¶ 11} Stuffleben responded by filing a "Waiver of Attorney-Client Privilege". In the waiver, he stated:
"As a corporate officer of Technology Strategies, Inc. and TSIHoldings, Inc., and for the purpose of this litigation only, thePlaintiff, Brian Stuffleben, waives any attorney/client privilege thatarises from the representation of these entities by Defendant, Gerald W.Cowden, the firm Cowden, Humphries (sic) Sarlson, and any associateor other attorney employed by or connected with the Defendants herein."
The waiver was signed on October 18, 2002 by Stuffleben in his individual capacity; he did not identify his specific corporate office.
 {¶ 12} Cowden Humphrey moved to strike the waiver because it was unsworn and unauthenticated, it was signed by Stuffleben in his personal capacity, and it did not extend to all the corporate entities from which Stuffleben was seeking discovery, i.e., Hockey Stick Investments, Ltd. and Hockey Stick Seed Capital Fund I, Ltd. Cowden Humphrey also challenged Stuffleben's corporate authority to waive the attorney-client privilege.
 {¶ 13} Cowden Humphrey also sought a protective order, arguing that Stuffleben sought information subject to an attorney-client privilege and attorney work product privilege.
 {¶ 14} On February 10, 2003, the trial court granted Stuffleben's motion to compel and issued the following order:
"Defendant's motion to strike plaintiff's motion to compel is denied.Although Plaintiff did not follow Local Rule 11(F), in order to avoidadditional discovery motions by the parties the court denies the motionto strike. Plaintiff's motion to compel is granted. Based on Lillback v.Metro and Berger v. Capozzoli, Plaintiff as sole shareholder, founder andpresident of TSI appears to believe that the Cowden Law Firm wasrepresenting him personally. Therefore, Defendants are ordered to producedocuments in requesting numbers 1, 2, 3, and 4. Furthermore, Defendant isordered to answer interrogatories 2 and 4. Defendant must produce answersand documents by 3/21/03."
 {¶ 15} Based on this order, Cowden Humphrey appeals, raising four assignments of error.
 {¶ 16} We initially note that we have jurisdiction to consider this appeal pursuant to R.C. 2505.02, which provides in pertinent part:
"(A) * * *
"* * *
"(3) `Provisional remedy' means a proceeding ancillary to an action,including, but not limited to, a proceeding for a preliminaryinjunction, attachment, discovery of privileged matter, or suppression ofevidence.
"* * *
"(B) An order is a final order that may be reviewed, affirmed,modified, or reversed, with or without retrial, when it is one ofthe following:
"* * *
"(4) An order that grants or denies a provisional remedy and to whichboth of the following apply:
 "(a) The order in effect determines the action with respect tothe provisional remedy prevents a judgment in the action in favorof the appealing party with respect to the provisional remedy.
 "(b) The appealing party would not be afforded a meaningful oreffective remedy by an appeal following final judgment as to allproceedings, issues, claims, and parties in the action."
 {¶ 17} The discovery of privileged information is a provisional remedy under R.C. 2505.02(A)(3). Here, Stuffleben requested documents and information which Cowden Humphrey argues is subject to an attorney-client privilege. Communications between an attorney and his/her client are confidential and privileged pursuant to R.C. 2317.02. Once the documents and information are disclosed, the information would no longer be confidential, thereby precluding Cowden Humphrey from obtaining a judgment in its favor regarding the provisional remedy at the close of trial and eliminating any meaningful or effective remedy on appeal. Accordingly, the trial court's order is a final appealable order, vesting this court with jurisdiction. R.C. 2505.02(B)(4); See, also, Johnson v.Univ. Hosps. of Cleveland, Cuyahoga App. No. 80117, 2002-Ohio-1396.
 {¶ 18} Having found that the trial court's order denying the motion for protective order and granting the motion to compel is a final appealable order, we now turn to the merits of the appeal.
 Attorney-Client Relationship {¶ 19} Cowden Humphrey alleges in its first assignment of error that the trial court erroneously applied a subjective test to determine whether an attorney-client relationship existed between Stuffleben and Cowden Humphrey. Cowden Humphrey asserts that the proper test is an objective test and moreover, had the trial court applied the proper test, it would have found that no attorney-client privilege existed between Stuffleben and Cowden Humphrey.
 {¶ 20} It is well settled that the trial court enjoys considerable discretion in the regulation of discovery. Manofsky v. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 668. We review a trial court's ruling on discovery pursuant to an abuse of discretion standard.Lightbody v. Rust (2000), 137 Ohio App.3d 658. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 21} In determining whether an attorney-client relationship exists, the court must determine "whether the putative client reasonably believed that he had entered into a confidential relationship with the attorney." Lillback v. Metropolitan Life Ins. Co. (1994),94 Ohio App.3d 100, 108, citing Landis v. Hunt (1992), 80 Ohio App.3d 662,669: "An essential element * * * is the determination that the relationship invoked such trust and confidence in the attorney that the communication became privileged and, thus, the information exchanged was so confidential as to invoke an attorney-client privilege." Moreover, the putative client must have "reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client." David v. Scharzwald, Robiner, Wolk Rock Co.,L.P.A. (1992), 79 Ohio App.3d 786, 798.
 {¶ 22} Contrary to both Stuffleben and Cowden Humphrey's assertions, we find that the test for determining the existence of an attorney-client relationship is both a subjective and objective test. As stated above, it is a question of both what the putative client believed and whether or not that belief was reasonable based on the surrounding circumstances. Lillback, supra.
 {¶ 23} Here, the trial court concluded an attorney-client relationship existed based solely on Stuffleben's belief without determining whether this belief was reasonable. The determination whether an attorney-client relationship exists must be supported by "substantial evidence." Henry Filters, Inc. v. Peabody Barnes, Inc. (1992),82 Ohio App.3d 255, 261. We find that the record is incomplete for this court to make any determination as to the reasonableness of Stuffleben's belief.
 {¶ 24} As a result, we find that the trial court abused its discretion in ordering the production of documents that may be privileged. Accordingly, we remand this case for an in camera inspection of the documents requested. We note that the mere fact that Cowden Humphrey represented Stuffleben in one matter does not mean that it continued to represent him simultaneously while representing the corporations. Here, it is incumbent upon the trial court to determine whether the law firm represented Stuffleben personally and order the release of only those documents pertaining to the personal representation of Stuffleben.
 {¶ 25} Moreover, Stuffleben's argument that he is entitled to the documents requested because his interests are indistinguishable with the corporations contradicts basic corporate law. "A corporation is a separate legal entity from its shareholders, even when there is but one shareholder." LeRoux's Billyle Supper Club v. Ma (1991),77 Ohio App.3d 417, 420, citing First Natl. Bank of Chicago v. TrebeinCo. (1898), 59 Ohio St. 316; Suzzi, Inc. v. Atlantic Dept. Stores
(1976), 49 Ohio App.2d 65, 68-69, fn. 1. An officer cannot manipulate the corporate entity to serve his/her own personal interests, i.e., hide behind the corporate identity for collection suits while later attempting to litigate claims belonging to the corporation.
 {¶ 26} Ohio law has consistently held that "an attorney's representation of a corporation does not make that attorney counsel to the corporate officers and directors as individuals." Nilvar v. MercyHealth System Western Ohio (S.D. Ohio 2001), 143 F. Supp.2d 909, 913. See, also, Hile v. Firmin, Sprague Huffman Co., L.P.A. (1991),71 Ohio App.3d 838. Moreover, EC 5-19 of the Code of Professional Responsibility provides:
"A lawyer employed or retained by a corporation or similar entity oweshis allegiance to the entity and not to a stockholder, director,officer, employee, representative, or other person connected with theentity. In advising the entity, a lawyer should keep paramount itsinterests and his professional judgment should not be influenced by thepersonal desires of any person or organization."
 {¶ 27} As a result, an attorney does not become personal counsel to an officer or shareholder simply by virtue of its representation of the corporation. See, Sayyah v. Cutrell (2001), 143 Ohio App.3d 102. Absent sufficient evidence that an attorney acted in a capacity other than that of the corporation's lawyer, a corporate officer cannot invoke an attorney-client relationship for his or her own personal benefit. UnitedStates v. Dakota (C.A. 6, 1999), 197 F.3d 821, 825.
 {¶ 28} We decline to hold that Stuffleben and the corporations are one and the same and that their interests are indistinguishable. If that was the case, the corporations would have been named a party to the suit. Moreover, we refuse to ignore the existence of the corporations. From the slight evidence contained in the record, it appears as though the interests of Stuffleben and the corporations may be different, i.e., the interests of the other shareholders.
 {¶ 29} In his motion to compel and appellate brief, Stuffleben argues that the attorney-client privilege automatically arises between corporate counsel and the officers of the corporations in the context of closely-held corporations. In support of this argument, he cites cases stemming from the Oregon Supreme Court's decision in In re Banks (1978),282 Or. 459. See, e.g., In re Berger McGill, Inc., (Bankr. S.D. Ohio, 1999), 242 B.R. 413; Abadir v. Fanous (Sept. 18, 1997), Cuyahoga App. No. 71871; Rosman v. Shapiro (S.D. New York, 1987), 653 F. Supp. 1441. Stuffleben contends that In re Banks and the other cases recognize that because the interests of a sole shareholder, director, or officer of a closely-held corporation are substantially identical to those of the corporation, such person is justified in believing that corporate counsel is representing his/her own interests. Therefore, the attorney-client relationship attaches to the individual.
 {¶ 30} We find In re Banks and the other cases distinguishable from the instant case. None of these cases dealt with an officer's right to corporate documents maintained by corporate counsel. In contrast, these cases dealt with the issue of disqualification of counsel. Because the ethical limitation on conflicts of interest is broader than the evidentiary privilege concerning communications between client and lawyer, this line of precedent is distinguishable from cases involving the right to discovery. See, Henry Filters, supra. In the context of asserting a right to privileged information, especially when its assertion may be adverse to another who undoubtedly holds the privilege, i.e., the corporation, we refuse to extend the general holdings applicable to disqualification of counsel to the instant case. Rather, we hold the trial court must narrowly construe the test for attorney-client privilege and apply it throughout the course of the alleged representation to determine whether Stuffleben is entitled to the requested discovery.
 {¶ 31} Cowden Humphrey's first assignment of error is sustained.
 {¶ 32} Because our disposition of the first assignment of error renders moot the second assignment of error, we shall address only the remaining third and fourth assignments of error.[1]
 Waiver/Interests of Corporation {¶ 33} Cowden Humphrey argues in its third and fourth assignments of error that the waiver executed by Stuffleben fails to effectively waive the attorney-client privilege of TSI and TSI Holdings, and in the alternative, even if the waiver complied with evidentiary requirements, Ohio law prohibits an officer of a corporation from waiving a corporation's attorney-client privilege for the sake of advancing his own personal interests.
 {¶ 34} In the context of corporations, it is well-settled that a corporation is a legal creature that exists only through its employees and agents. The attorney-client privilege attaches to a corporation by way of its corporate representatives seeking legal advice on behalf of the corporation. Accordingly, the corporate attorney-client privilege may be asserted only by a corporate representative who is authorized to do so. Commodity Futures Trading Commission v. Weintraub (1985), 471 U.S. 343,348-349. See, also, State v. Today's Bookstore, Inc. (1993),86 Ohio App.3d 810, 818 (recognizing that when the client is a corporation, the attorney-client privilege can be waived only by a decision of management). However, the managers "must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals."Weintraub, supra, at 349.
 {¶ 35} We agree with Cowden Humphrey that the waiver submitted by Stuffleben is defective because it failed to identify Stuffleben's authority for waiving the attorney-client privilege of TSI and TSI Holdings. But even if Stuffleben properly executed the waiver, we still find that the waiver is deficient.
 {¶ 36} Here, Stuffleben correctly asserts that as the chief executive officer, president, and managing shareholder, he has the authority to waive the attorney-client privilege on behalf of TSI and TSI Holdings. However, in the context of this litigation, he is not waiving the privilege on behalf of the corporations, but rather, on his own behalf. In line with other federal and state courts that have addressed this issue, we find this distinction fatal to Stuffleben's waiver. See,Genova v. Longs Peak Emergency Physicians, P.C. (Colo.Ct.App. 2003),72 P.3d 454 (holding that a director alone, without the consent of management, cannot waive or assert the attorney-client privilege belonging to corporation for own personal benefit); Milroy v. Hanson (D. Neb. 1995), 875 F. Supp. 646 (finding that director/minority shareholder could not waive the attorney-client privilege of the corporation because he sought documents solely to further his personal goals in litigation);Symmons v. O'Keefe (1995), 419 Mass. 288 (holding that plaintiffs' position as directors did not entitle them to waive attorney-client privilege where they were not asserting a derivative action but an action for their benefit only); State ex rel. Lause v. Adolf (Mo.Ct.App. 1986), 710 S.W.2d 362 (recognizing that directors could not waive a corporation's privilege because the corporation was not a party to the action).
 {¶ 37} Unless the corporations are named as parties to the litigation and the information sought in discovery is on behalf of the corporations, we find that Stuffleben cannot waive the corporations' attorney-client privilege.[2]
 {¶ 38} Cowden Humphrey's third and fourth assignments of error are sustained.
Judgment reversed.
Case remanded for an in camera inspection.
SEAN C. GALLAGHER, J. and ANTHONY O. CALABRESE, JR., J. CONCUR.
[1] The second assignment of error involved the procedural mechanics of the motion to compel.
[2] This situation is analogous to when an officer asserts claims belonging to the corporation. Ohio law consistently recognizes that the corporation is a separate entity from its officers and, therefore, causes of action belonging to the corporation may not be litigated by the officers for their own benefit. See, Maloof v. Squire, Sanders Dempsey, L.L.P., et al., Cuyahoga App. No. 82406, 2003-Ohio-4351.